# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **M S BENBOW AND ASSOCIATES PROFESSIONAL ENGINEERING CORPORATION,** | ) ) ) | **Civil Action No.: 21-108** |
| **Plaintiff,** | ) ) | **Judge:** |
| | ) | **Magistrate Judge:** |
| **versus** | ) ) | |
| **GODADDY.COM, LLC, AND DOES 1-20** | ) ) ) | **JURY TRIAL DEMANDED** |
| **Defendants.** | ) ) | |

## VERIFIED COMPLAINT FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY AND PERMANENT INJUNCTION, AND DAMAGES

**NOW INTO COURT**, through undersigned counsel, comes plaintiff M S Benbow and Associates Professional Engineering Corporation ("MSB"), who files this Verified Complaint against Defendant GODADDY.COM, LLC ("GoDaddy"), and John Does 1-20 ("Doe Defendants") for injunctive relief and damages.

## INTRODUCTION

1.      MSB brings this lawsuit to stop on-going cybercrimes that are being perpetuated on MSB and its customers.  MSB has brought these crimes to the attention of both the FBI and Defendant GoDaddy, but the Doe Defendants still have access to a fraudulent domain name that is being used by anonymous cybercriminals in a spear-phishing campaign to solicit MSB's customers and clients to divert payments to bank accounts under false pretenses.  GoDaddy has responded that it will not identify the cybercriminal or take action against the domain name registration without a court order.  MSB seeks such a court order with this lawsuit, including immediate injunctive relief to halt this criminal activity by disabling the fake domain name that the cybercriminals are using to perpetuate this fraud and then transferring it to MSB.

## PARTIES JURISDICTION, AND VENUE

2.      Plaintiff MSB is a Louisiana professional engineering corporation with its principal place of business in Metairie, Louisiana.

3.      Defendant GoDaddy is a Delaware limited liability company that is registered to do business in Louisiana.  According to the commercial database of the Louisiana Secretary of State, GoDaddy's domicile address is 2711 Centerville Road, Suite 400, Wilmington, DE 19808. Its principal office and headquarters is 14455 N Hayden Road, Suite 219, Scottsdale, AZ 85260. Its registered office in Louisiana is 501 Louisiana Avenue, Baton Rouge, LA 70802.  On information and belief, the members of GoDaddy are not domiciled in Louisiana.  GoDaddy may be served through its registered agent for service of process: Corporation Service Company, 501 Louisiana Avenue, Baton Rouge, LA 70802.

4.      MSB has not identified the Defendants referred to as the Doe Defendants. The Doe Defendants are individuals or entities who have registered, or caused to be registered, a fraudulent domain name that infringes on MSB's intellectual property and is being used to commit crimes.  MSB reserves the right to amend this complaint to allege such Doe Defendants' true names and capacities when they are ascertained.

5.      The Court has subject matter jurisdiction in this case pursuant to 28 U.S.C. § 1331 and 28 U.S. Code § 1332.  The Court has supplemental jurisdiction for any state law claims of fraud pursuant to 28 U.S.C. § 1367.  The Court has personal jurisdiction over the Defendants and the Doe Defendants.  GoDaddy is registered to do business in Louisiana and regularly and continuously transacts business and engages in commerce in Louisiana. The Doe Defendants knowingly directed and targeted parts of their unlawful scheme at MSB, which has its principal places of business in Louisiana.  Venue is proper because a substantial part of the events and

omissions giving rise to the claims alleged occurred in this district, including but not limited to the damage to MSB.

## **GENERAL ALLEGATIONS**

6.      Headquartered in Metairie, Louisiana, MSB opened its doors in 1978 and has grown into a first class, national engineering firm recognized many times over by its clients and its industry peers for the quality of its work and its attention to detail.  Over the past 40 years, MSB has built one of the Gulf South's most respected and versatile multi-discipline engineering corporations, providing professional engineering consulting services to major private and public sector clients throughout the nation. MSB serves clients from coast to coast, delivering integrated, turnkey engineering services to meet the diverse needs of various market segments faced with a need for complete solutions to complex engineering projects.  From oil refineries and airports to convention centers and public safety agencies, MSB serves a wide range of clients in various industries with a tremendous focus on how solutions align with client and project needs.  Its experienced and highly qualified staff brings decades of experience to bear on every project, with much tenure in each and every engineering discipline, as well as a commitment to quality that is second to none.

7.      Over four decades, MSB has built a reputation for excellence that is represented by its intellectually property including its tradename, logo, trademark, and service mark (collectively, "MSB's Trademark"):



8.      MSB's Trademark, which is famous and well respected in the construction and engineering industries, is extremely valuable to MSB, and any misuse or dilution of MSB's Trademark devalues the company.

9.      MSB uses the MSB Trademark prominently on its website and in its domain name "www.msbenbow.com" which MSB first registered at the dawn of the internet age in 1995 and has used continually since then.

10.      The domain name system, or DNS, is a system designed to make the Internet accessible to human beings.  Domain names are the main address a website uses on the web.  For example, they often start with "www" and most often end with ".com."  They are also used to create email addresses for businesses.  For example, MSB uses its domain name to create email addresses for its employees under the following form: "name@msbenbow.com."

11.      Defendant GoDaddy is an accredited domain name registrar by The Internet Corporation for Assigned Names and Numbers ("ICANN").  ICANN is the nonprofit organization responsible for coordinating the maintenance and procedures of several databases related to the namespaces and numerical spaces of the Internet, ensuring the network's stable and secure operation.  A domain registrar such as GoDaddy is a business that sells domain names and handles the business of registering them.  Registrars must be accredited by ICANN.

12.     On October 30, 2020, GoDaddy registered the domain name "msbennbow.com" on behalf of the Doe Defendants (the "Infringing Domain Name").  The Infringing Domain Name, which adds an extra "n" to MSB's domain name "msbenbow.com," has been used to deliberately mislead and perpetuate a fraud on MSB and its customers.  The Infringing Domain Name was used to create fake email accounts designed to mislead recipients into believing that they were actually communicating with MSB's employees.  For example, fake email accounts were created for MSB's project manager Randy J. Pourciau (rpourciau@msbennbow.com), MSB's controller Jennifer B. Edwards (jedwards@msbennbow.com), and MSB employee Lindsay B. Dodson (LDodson@msbennbow.com).

13.     On November 24, 2020, the Doe Defendants, purporting to be MSB's controller Jennifer B. Edwards, sent an email using the fake email address "jedwards@msbennbow.com" to Ross Thompson at "RThompson@warriors.com" and Peter Bryan at "PBryan@warriors.com," both of whom are representatives of MSB's client, the NBA basketball team the Golden State Warriors (the "Warriors"). This email, which was also sent to Adam Goodwin at "adam.goodwin@caaicon.com," the Warriors' agent at CAA ICON, concerned one of MSB's projects, the Chase Center arena in San Francisco, CA, which is the home venue for the Golden State Warriors.

14.     To make the email appear authentic, the Doe Defendants copied MSB's Trademark, logo, physical address, phone number, and website address into the emails they sent to MSB's customers:



**JENNIFER B. EDWARDS, C.P.A.**

Controller

**M S BENBOW & ASSOCIATES**
2450 Severn Avenue, Suite 400 Metairie, LA 70001-6933
**D** 504.836.8972 | **C** 504.289.7047
msbenbow.com

15.     To give the bogus email a further air of legitimacy, the Doe Defendants also used the fake email address they created for MSB's project manager Randy J. Pourciau (rpourciau@msbennbow.com) as an additional recipient on these communications.

16.     In the email, the cybercriminal Doe Defendants asked MSB's client for a "payment status for past due invoice."

17.     Thereafter, through a series of emails, Ross Thompson, the Corporate Controller of the Warriors, corresponded with the Doe Defendants in the mistaken belief he was actually communicating with MSB when in fact he was communicating with a Doe Defendant posing as MSB's controller Jennifer B. Edwards.   In the fraudulent emails, the Doe Defendants sought payment of over $428,000 in accounts receivables and falsely informed MSB's client "because of the second wave COVID-19 pandemic, we have redirected all incoming mails to below address. Our Post Office Box 836, Metairie, LA 70004 is temporarily not available to receive mails; this is due to preventive measures taken for safety purposes.  Hence, all check payments should be addressed and mailed out as follows: Attn: Catherine Coleman, 233 Lantern Hill Cir., Lexington SC 29073."  These criminal solicitations were not sent not by MSB.  The false and fraudulent emails sent to the Warriors and CAA ICON are attached *en globo* as Exhibit 1.

18.     In another incident, on November 30, 2020, the Doe Defendants, posing as MSB's project manager Randy J. Pourciau under the fake email address rpourciau@msbennbow.com sent a fake email to Dustin Reed and John Miller, representatives of MSB's customer The Broadmoor, seeking an update on the status of the payment of an invoice. Again, to make the email appear authentic, the cybercriminals copied MSB's Trademark, logo,

physical address, phone number, and website address and employed the fake email addresses for other MSB employees as additional recipients to give the infringing email a further air of legitimacy. The Doe Defendants gave MSB's client a false bank account not associated with MSB where the client could make payments that would never reach MSB.  The false and fraudulent emails to The Broadmoor are attached *en globo* as Exhibit 2.

19.     The email header(s) from the fraudulent emails show the originating IP address for the emails as 154.120.109.247, which traces to AFRINIC, the regional Internet registry for Africa.

20.     Once MSB discovered the fraud, it reported the cyberattacks to the Internet Crime Complaint Center of the Federal Bureau of Investigation.   Although MSB has been unable to determine if any payments to MSB were improperly diverted, and likely will not be certain until all its account receivables have fully aged past due, MSB remains concerned that the Doe Defendants still have access to the Infringing Domain, which they could use to continue to perpetuate their crimes against MSB and its customers.

21.     MSB contacted GoDaddy, the party that acted as registrant for the Infringing Doman Name, to inform GoDaddy of the criminal activity.  GoDaddy responded that "it cannot make any changes to a domain name without direction from a court."  *See* December 23, 2020 email from GoDaddy attached as Exhibit 3.   GoDaddy essentially told MSB that it needs a "court order" to shut down the imposter's email.

22.     Although accredited by ICANN, GoDaddy failed to take appropriate "steps to investigate and respond appropriately to any reports of abuse" as required by the ICANN Registrar Accreditation Agreement ("RAA"). GoDaddy also failed to provide needed information regarding the identity of names and contact information of the party that registered

the Infringing Domain Name so that MSB could take corrective steps.  However, GoDaddy did inform MSB that that "if we receive notice of a pending legal dispute we will lock the name so it cannot be transferred or otherwise modified."

23.     Cybercrime is highly dependent on registered domain names, which are used to send spear phishing emails, operate malware, and engage in other types of online abuse. Cybercriminals often rely on privacy to hide their ownership and control of malicious domains from the public.  The Doe Defendants as registrants, and using GoDaddy as registrar, registered the domain name msbennbow.com for the sole purpose of criminal activity.  The Infringing Domain Name has been used for malicious, fraudulent, and criminal activity, including phishing emails. More specifically, the Doe Defendants engaged in a social engineering attack in which the hackers/imposters were able to gain access to MSB's list of clients and sent emails to MSB's clients under false pretense in an effort to divert funds that were legitimately owed to MSB.

24.     In addition to fraud, the misuse of the msbennbow.com domain name also has infringed on MSB's Trademark.

25.     MSB own the exclusive right to use and control its intellectual property including its tradename and trademarks used in connection with goods and services including, but not limited to, the use of domain names for providing and hosting online web facilities and services. The Infringing Domain Name is virtually identical and confusingly similar to MSB's Trademark.

26.     MSB seeks injunctive relief against GoDaddy who has registered (as the registrant) the Infringing Domain Name that infringes MSB Trademark to preclude further criminal use of the Infringing Domain Name and to transfer the Infringing Tradename to MSB.

27.     MSB seek damages and injunctive relief against the Doe Defendants to stop the foregoing ongoing unlawful and harmful conduct, pursuant to the Lanham Act and the Anti-Cybersquatting Consumer Protection Act (15 U.S.C. § 1125).

**Count I**
**Cybersquatting under the Lanham Act, 15 U.S.C. § 1125(d)**

28.     MSB incorporates the allegations in the preceding paragraphs as if fully set forth herein.

29.     MSB owns its tradename and trademark M S Benbow, which it has continuously used since 1978.

30.     The MSB Trademark was distinctive and/or famous at the time of registration of the Infringing Domain Name.

31.     The Infringing Domain Name is identical or confusingly similar to and/or dilutive of MSB's Trademark.

32.     The Infringing Domain Name impairs the distinctiveness of MSB's Trademark and weakens the connection in consumers' minds between MSB and its tradename and trademark.

33.     Upon information and belief, the Infringing Domain Name was registered, trafficked in, or used with a bad faith intent to profit from MSB and its tradename and trademark.

34.     Upon information and belief, the Doe Defendants who registered, trafficked in, or used the Infringing Domain Names have no trademark or other intellectual property rights in the Infringing Domain Name.

35.     Upon information and belief, the Doe Defendants who registered, trafficked in, or used the Infringing Domain Name made no prior use of the Infringing Domain Name in connection with the bona fide offering of any goods or services.

36.     Upon information and belief, the Doe Defendants who registered, trafficked in, or used the Infringing Domain Name made no bona fide non-commercial or fair use of the Infringing Domain Name in a site accessible under the Infringing Domain Name.

37.     Upon information and belief, the Infringing Domain Name was registered, trafficked in, or used with a fraudulent and criminal intent to divert payment from MSB customers in a manner that would harm MSB and the goodwill represented by MSB's Trademark,  by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the emails affiliated with the Infringing Domain Name.

38.     The Infringing Domain Name is used in the same channels of trade or in the same manner as MSB's goods and services, and, in fact, is being used to fraudulently simulate MSB itself.

39.     Upon information and belief, the Doe Defendants who registered, trafficked in, or used the Infringing Domain Name registered the Infringing Domain Name with full knowledge that it was virtually identical and confusingly similar to MSB's Trademark.

40.     MSB is not affiliated or connected with the Infringing Domain Name, nor has MSB endorsed or sponsored the Infringing Domain Name.

41.     Because of the likelihood of confusion and actual confusion between MSB's Trademark and the Infringing Domain Name, the fraudulent and criminal conduct associated with the Infringing Domain Name will negatively impact the reputation and goodwill of MSB and its trademark and tradename.

42.     As a direct and proximate result of such conduct, MSB has suffered, and will continue to suffer loss and irreparable injury to its business, reputation, and goodwill.

43.     Defendants' registration, use, and/or trafficking in the Infringing Domain Name constitutes cybersquatting in violation of 15 U.S.C. § 1125(d), entitling MSB to relief.

44.     MSB is entitled to recover Defendants' profits, MSB's actual damages, and the costs of this action. Instead of actual damages and profits, MSB may alternatively elect to an award of statutory damages under 15 U.S.C. § 1117(d) in an amount of $100,000 per domain name.

45.     This is an exceptional case, entitling MSB to an award of reasonable attorneys' fees under 15 U.S.C. § 1117.

46.     MSB's remedy at law is not adequate to compensate for the injuries inflicted on MSB.  Accordingly, MSB is entitled to an order transferring the Infringing Domain Name to MSB.

**Count II**
**Trademark and Service Mark Infringement of**
**MSB's Trademarks and False Designation of Origin Under 15 U.S.C. § 1125(a)**

47.     MSB incorporates the allegations set forth in the preceding paragraphs as if set forth in full herein.

48.     MSB's Trademark is a distinctive mark that is associated with MSB and exclusively identifies its respective businesses, products, and services.

49.     The Doe Defendants' use in commerce of MSB's Trademark, and variations thereof, is likely to cause, and has actually caused, confusion and mistake, and has deceived the relevant public that the Doe Defendants' communications are authorized, sponsored, or approved by, or are affiliated with, MSB.

50.     The Doe Defendants' acts constitute trademark and service mark infringement of MSB's trademark, as well as false designation of origin, in violation of 15 U.S.C. § 1125(a), entitling MSB to relief.

51.     Defendants have unfairly profited from their conduct.

52.     By reason of the above-described acts of Defendants, MSB has suffered damage to the goodwill associated with its trademark.

53.     The Doe Defendants have irreparably harmed MSB and, if not enjoined, will continue to irreparably harm MSB and its trademarks.

54.     The Doe Defendants have irreparably harmed the general public and, if not enjoined, will continue to irreparably harm the general public, which has an interest in being free from confusion, mistake, and deception.

55.     MSB's remedy at law is not adequate to compensate it for the injuries inflicted by Defendants. Accordingly, MSB is entitled to permanent injunctive relief pursuant to 15 U.S.C. § 1117.

56.     MSB is entitled to recover Defendants' profits, MSB's actual damages, and the costs of this action. MSB is also entitled to have its damages trebled under 15 U.S.C. § 1117(a).

57.     This is an exceptional case, making MSB eligible for an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

**Count III**
**Unfair Trade Practices Pursuant to the Louisiana Unfair**
**Trade Practices and Consumer Protection Law, La. R.S. 51:1401 et seq.**

58.     MSB incorporates the allegations set forth in the preceding paragraphs as if set forth in full herein.

59.     Defendants' actions as alleged herein constitute unfair competition and unfair or deceptive acts or practices in the conduct of trade or commerce, including but not limited to cybersquatting, unauthorized use of MSB's Trademark, false advertising and false designation of origin, improper access to MSB's computer systems, and fraud.

60.     Defendants' actions as alleged herein have been immoral, unethical, oppressive, unscrupulous, and substantially injurious to MSB.

61.     Defendants have therefore violated the Louisiana Unfair Trade Practices and Consumer Protection Law, La. R.S. 51:1401 et seq.

62.     As a direct and proximate result of Defendants' unfair competition and/or unfair or deceptive acts or practices, MSB has suffered an ascertainable loss of money and property, for which Defendants are liable.

63.     Defendants are further entitled to an award of reasonable attorneys' fees and costs, pursuant to La. R.S. 51:1409(A).

**Count IV**
**Fraud**

64.     MSB incorporates the allegations set forth in the preceding paragraphs as if set forth in full herein.

65.     As alleged herein, the Doe Defendants have made false representations to MSB's customer's concerning their association with MSB, through at least the November 24, 2020 and the November 30, 2020 criminal solicitations to MSB's customers, as outlined above.

66.     Each of these communications was a statement of material fact.

67.     Each of the representations was knowingly false.

68.     The Doe Defendants made these representation with an intent to deceive MSB's customers.

69.     MSB's customers justifiably relied on the forgoing misrepresentations.

70.     MSB has suffered damages as a direct and proximate result of the Doe Defendants' fraudulent misrepresentations.

**Count V**
**Injunctive Relief**

71.     MSB incorporates the allegations set forth in the preceding paragraphs as if set forth in full herein.

72.     Pursuant to 15 U.S.C. § 1116, MSB is entitled to a temporary, preliminary, and permanent injunction preventing any actual or threatened infringement of its Marks by Defendants, their officers, agents, servants, employees, and attorneys, and other persons who are in active concert or participation with any of the foregoing (collectively, "Covered Persons"). More specifically, MSB is entitled to an injunction prohibiting Covered Persons' unauthorized use of the MSB Trademark.

73.     Pursuant to 15 U.S.C. 1125(a), MSB is entitled to a temporary, preliminary, and permanent injunction preventing Covered Persons from engaging in any false designations of origin, passing off, false and misleading statements, false advertising, and/or unfair competition related to MSB's Trademark.  More specifically, MSB is entitled to an injunction prohibiting Covered Persons from taking any actions which suggest that Defendants are in any way affiliated with MSB, and/or from taking any actions that mislead or confuse the public regarding the same.

74.     Pursuant to 15 U.S.C. 1125(d), MSB is entitled to an order transferring the Infringing Domain Name to its control, or, in the alternative, an order forfeiting, cancelling, disabling, and/or deactivating the Infringing Domain Name.

75.     MSB has a substantial likelihood of prevailing on the merits of its claims.

76.     Unless the Covered Persons are enjoined from the conduct described herein, there is a substantial threat that MSB, its customers, and the public will continue to suffer irreparable harm, including ongoing criminal conduct that poses a threat to public generally and specific infringement of MSB's Trademark, loss of goodwill, and financial losses that are not presently calculable.

77.     The irreparable harm that MSB will suffer if injunctive relief is denied outweighs the potential harm (if any) to Defendants if injunctive relief is granted.

78.     Granting the requested injunctive relief will not disserve the public interest but will in fact serve it greatly.

79.     Accordingly, without the requirement of posting a bond and from the date of the Temporary Restraining Order until the expiration of the order in accordance with the Federal Rules of Civil Procedure, MSB is entitled to a temporary restraining order and preliminary and permanent injunctive relief as set forth herein.

80.     Specifically, MSB requests that the Court enter a temporary restraining order, preliminary injunction, and a permanent injunction enjoining and restraining the Doe Defendants and their agents, employees, successors, and assigns, and all other persons acting in concert with or in conspiracy with or affiliated with Doe Defendants, from registering, using, or trafficking in any domain name that is identical or confusingly similar MSB's Trademark, including, but not limited to, by engaging in any use, including advertising, promoting, marketing, franchising, selling, and offering for sale any goods or services, on or in connection with the MSB Trademark, or any similar mark or designation, that is likely to cause confusion, or to cause mistake as to the affiliation of that use with MSB, or otherwise engaging in any activity which lessens the distinctiveness or tarnishes the MSB Trademark.

81. MSB further requests that that the Court enter a temporary restraining order, preliminary injunction, and a permanent injunction ordering GoDaddy to lock and disable the Infringing Domain Name and directing GoDaddy to disclose the identity and location of the registrants of the Infringing Domain Name.

82. MSB further requests that the Court enter a preliminary and a permanent injunction transferring the ownership of the Infringing Domain Name to MSB.

83. MSB demands a trial by jury on all issues so triable.

## **PRAYER FOR RELIEF**

WHEREFORE, MSB respectfully requests judgment against Defendants as follows:

1.  That the Court enter a judgment against the Doe Defendants that the Doe Defendants have:

    a.  Infringed the rights of MSB in violation of 15 U.S.C. § 1125;

    b.  That the acts of the Doe Defendants were willful;

    c.  That MSB be awarded damages for the Doe Defendants' trademark infringement and false designation of origin and that these damages be trebled due to the Defendants' willfulness, in accordance with the provisions of 15 U.S.C. § 1117;

    d.  That the Doe Defendants be ordered to account for and disgorge to MSB all amounts by which the Doe Defendants have been unjustly enriched by reason of the unlawful acts complained of;

    e.  That MSB be awarded $100,000 in statutory damages per infringing domain name by reason of the Doe Defendants' cybersquatting in accordance with the provisions of 15 U.S.C. § 1117; and

   f.   That MSB be awarded prejudgment interest on all infringement damages.

2.   That the Court enter a temporary restraining order, preliminary injunction, and a permanent injunction enjoining and restraining the Doe Defendants and their agents, employees, successors, and assigns, and all other persons acting in concert with or in conspiracy with or affiliated with Doe Defendants, from registering, using, or trafficking in any domain name that is identical or confusingly similar MSB's Trademark;

   a.   Engaging in any use, including advertising, promoting, marketing, franchising, selling, and offering for sale any goods or services, on or in connection with the MSB Trademark, or any similar mark or designation, that is likely to cause confusion, or to cause mistake as to the affiliation of that use with MSB; and

   b.   Engaging in any activity which lessens the distinctiveness or tarnishes the MSB Trademark;

3.   That the Court enter a temporary restraining order, preliminary injunction, and a permanent injunction ordering GoDaddy to lock and disable the Infringing Domain Name and directing GoDaddy to disclose the identity and location of the registrants of the Infringing Domain Name.

4.   That the Court enter a preliminary and a permanent injunction transferring the ownership of the Infringing Domain Name to MSB.

5.   That the Court award MSB its reasonable attorneys' fees pursuant to 15 U.S.C. § 1117 and any other applicable provision of law.

6.      That the Court award MSB its costs of suit incurred herein.

7.      That the Court award such other or further relief as the Court may deem just and

proper.

**DATED: January 19, 2021**

Respectfully submitted,

**PHELPS DUNBAR LLP**

BY:   */s/ David L. Patrón*
David L. Patrón (Bar #22566)
James H. Gilbert (Bar # 36468)
Gregory J. Reda (Bar # 37270)
Canal Place | 365 Canal Street, Suite 2000
New Orleans, Louisiana 70130-6534
Telephone: 504-566-1311
Facsimile: 504-568-9130
Email: patrond@phelps.com
    james.gilbert@phelps.com
    gregory.reda@phelps.com

**ATTORNEYS FOR PLAINTIFF M S
BENBOW AND ASSOCIATES,
PROFESSIONAL ENGINEERING
CORPORATION**

**VERIFICATION**

I, _Kelly A. Weber_ , hereby state that I have read the foregoing Verified Complaint For Temporary Restraining Order, Preliminary And Permanent Injunction, And Damages, that I am authorized to make this Verification on behalf of M S Benbow and Associates, Professional Engineering Corporation, and that the allegations in the Complaint are true and based on personal knowledge or information available to me which I believe to be true to the best of my knowledge, information, and belief. This statement is made subject to the penalties of 28 U.S.C. §1746 relating to unsworn declarations under penalty of perjury.


Executed on January _15_ 2021